IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSE JOEL ORELLANA CRUZ,           )
                                   )
            Petitioner,            )
                                   )
      vs.                          )    Civil Action No. 3:26-cv-00284
                                   )    Judge Stephanie L. Haines
LEONARD ODDO, *et al.,*            )
                                   )
            Respondents.           )
                                   )

## MEMORANDUM OPINION

Presently before the Court is Jose Joel Orellana Cruz's ("Petitioner") Emergency Motion to Enforce Habeas Corpus Order. ECF No. 15. For the reasons that follow, the motion will be **GRANTED IN PART**.

## I.    BACKGROUND

Petitioner is a citizen of El Salvador who entered the United States without admission or parole in February of 2005. ECF No. 1, ¶ 43. On February 4, 2025, Petitioner was traveling to work when he was detained by York Enforcement and Removal officers, who were conducting a 287(g)[1] enforcement action in conjunction with West Virginia County law enforcement officers. *Id.* at ¶ 51; ECF No. 9, p. 5. Petitioner was later placed in the custody of Immigration and Customs Enforcement and transported to Moshannon Valley Processing Center. ECF No. 9, p. 6. On February 19, 2026, Petitioner filed his Petition for a Writ of Habeas Corpus. ECF No. 1. On March

---

[1] "The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 added Section 287(g) to the Immigration and Nationality Act (INA), authorizing U.S. Immigration and Customs Enforcement (ICE) to delegate state and local law enforcement officers the authority to perform specified immigration officer functions under ICE's direction and oversight." *Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, https://www.ice.gov/identify-and-arrest/287g (last visited June 4, 2026).

1

20, 2026, an immigration judge ("IJ") held a removal proceedings merits hearing on Petitioner's status. ECF No. 20-1. On the same day, the IJ found Petitioner removable, denied his application for cancellation of removal, and granted his application for post-conclusion voluntary departure. *Id.* In the IJ's order, Petitioner was subject to the following voluntary departure conditions: (1) departure under safeguards, and (2) departure within 60 days of the order becoming a final order. *Id.* Petitioner was also required to post a voluntary departure bond within five business days but no bond amount was given. *Id.* Petitioner reserved appeal and the order gave an appeal deadline of April 20, 2026. *Id.* The following sequence of events then occurred:

- On March 26, Petitioner unsuccessfully attempted to fulfill the voluntary departure bond requirement and was informed that the IJ's order needed to be amended to list a bond amount. ECF No. 21-2, pp. 23-27, 29-32, 34.

- On March 30, upon Petitioner's request, the IJ amended his order to require a voluntary departure bond of $0 and the IJ also interpreted the request to mean Petitioner no longer reserved appeal. *Id.*, p. 41-43. Thus, the IJ ordered voluntary departure by May 29. *Id.*

- On April 1, after further motion of Petitioner, the IJ again amended his order to require a voluntary departure bond of $500,[2] to reinstate Petitioner's right to appeal, and to declare that the deadline for appeal remained April 20 because the IJ considered this amended order "merely clerical in nature . . . ." ECF No. 20-2. The amended order further stated that the voluntary departure period would only begin once Petitioner's "appeal is unsuccessful or not timely filed." *Id.*

- On April 23, Petitioner filed his appeal of the IJ's denial of the application for cancellation of removal with the Board of Immigration Appeals ("BIA"). ECF No. 15-2.

---

[2] Although the IJ stated that because Petitioner was detained, "[n]o amount of bond should be required," 8 C.F.R. § 1240.26(c)(3)(i) clearly states that the voluntary departure bond amount shall "in no case [be] less than $500."

- On May 1, in response to his habeas petition, the Court ordered Petitioner receive an individualized bond hearing by May 11. ECF No. 13.

- On May 4, Petitioner's bond hearing was scheduled for May 11. ECF No. 15-1.

- On May 5, in the early morning hours, Petitioner was transported to El Salvador. ECF No. 15, p. 1.

- On May 6, Petitioner filed an Emergency Motion to Enforce Habeas Corpus Order, alleging Respondents unlawfully transported Petitioner to El Salvador while his BIA appeal was pending and before the voluntary departure period had begun. ECF No. 15.

- On May 11, Respondents filed a motion with the BIA seeking summary dismissal of Petitioner's appeal because it was allegedly untimely filed. ECF No. 21-2, pp. 3-4.

- On May 18, in their response to Petitioner's motion to enforce, Respondents took the position that the IJ's order had become "final by operation of law." *See* ECF No. 20, p. 2.

- On June 3, Counsel for Respondents confirmed that the Government was aware of the Court's May 1 Order and the scheduled bond hearing. *See also id.*

## II.    DISCUSSION

Respondents assert that the Court lacks jurisdiction because Petitioner requested and received post-conclusion voluntary departure. They further contend that because Petitioner has now departed the United States, there is no effective relief the Court can provide and thus, the habeas petition is moot. The Court disagrees. Respondents' argument conflates two distinct issues. Here, the Court does not review the IJ's discretionary decision to grant voluntary departure, the conditions attached to that grant, or the length of the voluntary departure period. Rather, the question before the Court is whether Respondents had the authority to remove Petitioner while his BIA appeal remained pending and while this Court's order requiring an individualized bond

hearing remained outstanding.

### A.  Jurisdiction

Respondents rely on 8 U.S.C. § 1252(a)(2)(B)(i), which bars judicial review of certain judgments regarding discretionary relief, including voluntary departure under 8 U.S.C. § 1229c, to argue that the Court lacks jurisdiction to review the IJ's order. But Petitioner does not ask this Court to review the IJ's decision to grant voluntary departure. Instead, he asks the Court to enforce its prior habeas order and to remedy what he contends was the unlawful act of transporting Petitioner out of the United States while his BIA appeal remained pending. The Court concludes that this is a legal question collateral to the IJ's discretionary grant of voluntary departure.

The Court next considers whether it has subject matter jurisdiction to grant the relief Petitioner requests. 8 U.S.C. § 1252(g) provides, in relevant part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Notably, the relief that Petitioner seeks—an order requiring Respondents to facilitate his return to the United States and for immediate release upon his return—arguably "arises from" a decision or action, mistaken or not, to adjudicate his case.

The Supreme Court, however, has adopted a "narrow reading" of 8 U.S.C. § 1252(g). *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999). There, the Supreme Court explained that Section 1252(g) "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 485 n.9. Courts following *Reno* appear to agree Section 1252(g) does not preclude jurisdiction over purely legal questions. *Duarte v. Warden*, No. EP-26-CV-00089-DCG, 2026 WL 1392585, at *2 n.14 (W.D. Tex. Apr. 21, 2026) (collecting cases).

Here, Petitioner contends that Respondents lacked authority to transport him out of the United States because his BIA appeal had been filed and remained pending and thus, the voluntary departure period had not yet begun. The Court concludes that this is a purely legal issue, meaning that 8 U.S.C. § 1252(g) does not strip the Court of jurisdiction to decide it. The Court finds support for this conclusion in *Abrego Garcia v. Noem*, where the Government removed an alien without any legal grounds. 777 F. Supp. 3d 501, 510 (D. Md. 2025). After determining that it retained jurisdiction, the district court ordered his return. *Id.* Thereafter, the Government sought emergency relief from the Supreme Court to stay the district court's order. *See Noem v. Garcia*, 145 S. Ct. 1017, 1018 (2025). Although the Supreme Court did not expressly decide what effect, if any, Section 1252(g) had on the district court's jurisdiction, it held that the district court properly required the Government to "facilitate" Abrego Garcia's release from custody in El Salvador and to ensure that his case would be handled as it would have been had he not been improperly sent there. *Id.*

The Court recognizes that *Abrego Garcia* does not stand for the proposition that Section 1252(g) is categorically inapplicable whenever a petitioner seeks facilitation of return. Nor is the Court inferring jurisdiction merely because a potential jurisdictional defect was not expressly resolved. *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed.") But *Abrego Garcia* is still instructive because the Supreme Court did not disturb the facilitation portion of the district court's order. *Noem*, 145 S. Ct. at 1018. That provides some reassurance for the conclusion that the Court has jurisdiction to order the Government to facilitate Petitioner's return. Accordingly, seeing no other authorities that preclude the Court's review, the Court concludes that it has jurisdiction to consider Petitioner's

motion.

**B. Lawfulness of Petitioner's transportation outside of the United States.**

The parties dispute the legal character of Petitioner's departure from the United States. Respondents do not argue that they executed a final order of removal. Rather, they contend that Petitioner requested and received post-conclusion voluntary departure, that his BIA appeal was untimely, and that Respondents therefore acted within their authority by transporting him out of the United States under safeguards in accordance with the IJ's voluntary departure order. But that framing does not end the inquiry. The question is not whether Petitioner requested voluntary departure before the IJ. He did. Nor is the question whether Respondents may, in appropriate circumstances, supervise or safeguard a noncitizen's voluntary departure. They may. The question is whether Respondents had authority to carry out that supervised departure when it did—while Petitioner's BIA appeal had been filed, docketed, and, according to the record before the Court, remained pending before the BIA. ECF No. 21-1, p. 2.

Respondents contend that the appeal was untimely. But where an appeal has been filed and remains pending before the BIA, the timeliness and effect of that appeal are matters for the BIA to address in the first instance. Respondents may not unilaterally decide that an appeal is untimely, treat the voluntary departure period as having begun, and then transport an alien out of the United States before the BIA acts. The BIA has authority to determine whether an appeal is timely, whether it should be dismissed as untimely, and whether any exception or equitable tolling principle applies. *Matter of Morales-Morales*, 28 I&N Dec. 714, 716 (BIA 2023) ("[T]he Board has authority to accept what are otherwise untimely appeals, and consider them timely . . . .") Until the BIA made such a determination, Respondents could not rely on their own view of timeliness to treat Petitioner's departure obligation as ripe for execution. Respondents' later filing before the

6

BIA reinforces this conclusion. Six days after Petitioner had been transported to El Salvador, Respondents moved the BIA to summarily dismiss Petitioner's appeal as untimely. ECF No. 21-2, pp. 3-4. That filing confirms that the timeliness and effect of Petitioner's appeal were matters for the BIA to address. It also underscores the problem with Respondents' position here: Respondents treated the voluntary departure period as having begun before the BIA had taken the very action Respondents later requested—dismissal of the appeal as untimely.

The IJ's order reinforces that conclusion as well. The order did not require Petitioner's immediate departure. It provided that the voluntary departure period would begin only once Petitioner's appeal was unsuccessful or not timely filed. ECF No. 20-2, p. 3. Respondents say the latter condition occurred. Petitioner says the appeal was timely and remains pending. The Court need not resolve the ultimate timeliness question. It is enough that, on the present record, the BIA had accepted the appeal for filing and had not dismissed it. In those circumstances, Respondents lacked authority to bypass the BIA and act as though the voluntary departure period had already begun. *See* 8 C.F.R. § 1003.6(a) ("[An IJ] decision . . . shall not be executed . . . while an appeal is *pending* . . . ." (emphasis added)); *Matter of A-M-*, 23 I&N Dec. 737, 744 (BIA 2005) ("The *filing* of an appeal with the Board automatically stays execution of the Immigration Judge's order." (emphasis added)). Nor does the label "voluntary departure" control. Petitioner was in Respondents' custody and was transported out of the United States under Respondents' supervision. Petitioner's BIA appeal remained pending and the Board had not determined that the appeal was untimely. Thus, Respondents' action was not rendered lawful merely because Petitioner had previously requested voluntary departure as a form of relief. On the present record, the Court concludes that Respondents lacked authority to effectuate that departure before the BIA determined the status and effect of Petitioner's pending appeal. Respondents' action also prevented

the individualized bond hearing this Court had ordered from taking place.

## C. Mootness

Respondents next argue that this case is moot because Petitioner has departed the United States. According to Respondents, because "voluntary departure has occurred," there is no effective relief this Court can provide. ECF No. 20, pp. 9-11. The Court disagrees. A case becomes moot only when developments during litigation make it impossible for the Court to grant *any* effective relief. *Keitel v. Mazurkiewicz*, 729 F.3d 278, 280 (3d Cir. 2013). That standard is not satisfied here. Although Petitioner is no longer physically detained in the United States, he seeks more than release from then-existing custody. He asks the Court to enforce its prior habeas order and to require Respondents to take available steps to facilitate his return so that the individualized bond hearing previously ordered by the Court may occur. That relief remains available.

Respondents' mootness argument also depends on a disputed premise: that Petitioner's departure was a lawful voluntary departure. The Court cannot accept that premise for purposes of mootness. The relevant fact is that Respondents transported Petitioner out of the United States while he was in custody and before Respondents had authority to do so because his BIA appeal had been filed, docketed, and remained pending. Put another way, Petitioner's departure did not moot the case but rather is the very action for which he now seeks a remedy.

The cases on which Respondents rely do not compel a different result. It is true that a habeas petition challenging detention ordinarily becomes moot when the petitioner is released from custody or transferred, absent a continuing injury or collateral consequence. But the cited cases do not establish that the Government may moot a pending habeas action by transporting the petitioner out of the United States before the Court-ordered habeas remedy can be implemented. Nor is this a case in which judicial intervention is no longer needed. Before Petitioner's departure,

8

the Court ordered Respondents to provide him with an individualized bond hearing by May 11, 2026. Respondents' action prevented that hearing from occurring. The Court can still grant meaningful relief by ordering Respondents to facilitate Petitioner's return and to restore, as nearly as practicable, the posture Petitioner would have occupied had Respondents not transported him out of the United States before the BIA addressed the pending appeal and before the bond hearing occurred.

The Court's review of other cases reflects the commonsense proposition that, where the unlawful act is the petitioner's departure from the United States, "return is the appropriate remedy . . . ." *D.V.D. v. U.S. Dep't of Homeland Sec.*, 784 F. Supp. 3d 401, 406 (D. Mass. 2025) (collecting cases); *see also J.G.G. v. Trump*, 813 F. Supp. 3d 126, 155 (D.D.C. 2025) (allowing the Government "to articulate what steps it proposes to facilitate the return of [the immigrant detainees]" after they were unlawfully removed); *Melgar-Salmeron v. Blanche*, No. 23-7792 (2d Cir. June 24, 2025), Dkt. No. 49 (ordering the Government "to facilitate the return of Petitioner to the United States as soon as possible . . . ."). Most recently, in *Noem v. Garcia*, the Supreme Court unanimously agreed that facilitating an individual's return to the United States is a proper remedy for illegal removal. 145 S. Ct. 1017, 1018-19 (2025). There, the petitioner was removed to El Salvador and detained in a Salvadoran prison despite an immigration judge's order expressly prohibiting removal to El Salvador. *Id.* The Government did not deny the illegal nature of petitioner's removal but claimed that it was an "administrative error" and an "oversight." *Id.* In a unanimous opinion, the Supreme Court held that the district court "properly require[d] the Government to 'facilitate' [petitioner's] release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Id.* at 1018.

Accordingly, Petitioner's departure from the United States does not moot Petitioner's

request for enforcement of the Court's prior order or for facilitation of return as a remedy for Respondents' unauthorized action.

**D. Remedy.**

The last question for the Court is the appropriate remedy. Respondents argue that the Court cannot provide relief because Petitioner has already departed the United States pursuant to the IJ's grant of voluntary departure. The Court disagrees. For the reasons explained above, the Court has concluded that Respondents lacked authority to effectuate Petitioner's departure while his BIA appeal remained pending. The fact that Petitioner is now outside the United States therefore does not eliminate the Court's ability to grant meaningful relief.

Here, had Petitioner remained in the United States, he would have received an individualized bond hearing by May 11, 2026. Respondents' action prevented the ordered bond hearing from taking place and placed Petitioner outside the United States during the pendency of his BIA appeal, which risked altering Petitioner's position before the BIA. Under 8 C.F.R. § 1003.4, departure from the United States after an appeal has been taken, but before the BIA has decided the appeal, generally constitutes a withdrawal of the appeal.[3] Facilitation of return is therefore necessary to restore, as nearly as practicable, the position Petitioner would have occupied absent Respondents' unauthorized action. *See D.V.D.*, 784 F. Supp. 3d at 406; *see also Noem*, 145 S. Ct. at 1019 (Sotomayor, J., concurring) ("I agree with the Court's order that the proper remedy is to provide Abrego Garcia with all the process to which he would have been entitled had he not been unlawfully removed.") The Court also finds guidance for this relief in *Noem*, where the illegality of the removal is what rendered facilitation of the petitioner's return necessary to "ensure

---

[3] To be sure, an unlawful removal during the pendency of a direct appeal does not necessarily withdraw that appeal. In *Matter of Diaz-Garcia*, the BIA held that an unlawful removal in violation of 8 C.F.R. § 1003.6(a) does not deprive the Board of jurisdiction to decide the pending appeal. 25 I&N Dec. 794, 797 (BIA 2012).

that [petitioner's] case [wa]s handled as it would have been had he not been improperly sent to El Salvador." 145 S. Ct. at 1018.

Accordingly, the Court will order facilitation of return but not, at this stage, Petitioner's immediate release upon return. Nothing in this Order, however, requires Respondents to detain Petitioner if they have lawful authority to release him on appropriate conditions. Given the deference due to the Executive Branch on issues of foreign affairs, and consistent with *Abrego Garcia*, the Court will allow Respondents five days to file a status report identifying affirmative steps already taken to facilitate Petitioner's return to the United States. As noted by other courts faced with similar situations, the fact that Petitioner is "'not held by any foreign government' should make facilitating [his] return easier." *J.G.G.*, 813 F. Supp. 3d at 155-56 (quoting *D.V.D.*, 784 F. Supp. 3d at 412 n.10).

## III.    CONCLUSION

For the reasons set forth herein, the motion will be **GRANTED IN PART**. An appropriate Order follows.

## ORDER

**AND NOW**, this 8th day of June, 2026, for the reasons stated in the Memorandum Opinion, it is hereby **ORDERED** that:

1.  The Emergency Motion to Enforce Habeas Corpus Order, ECF No. 15, is **GRANTED IN PART** to the extent it directs Respondents to take all available steps to facilitate the return of Jose Joel Orellana Cruz to the United States as soon as possible.

2.  Respondents shall, within five days, file a status report to the Court of (1) affirmative steps taken to facilitate Petitioner's return to the United States; and (2) any setbacks during that

process. Respondents shall further provide these updates at least every seven days until the Government returns him to the United States.

3. Nothing in this Order requires Respondents to detain Petitioner upon his return if Respondents have lawful authority to release him on appropriate conditions.

4. Upon Petitioner's return to the United States, Respondents shall promptly notify the Court whether Petitioner has been detained or released. If Respondents release Petitioner, they shall identify any conditions of release. If Respondents detain Petitioner, they shall identify: (a) Petitioner's place of detention; (b) the statutory authority under which Respondents contend detention is authorized; and (c) the steps Respondents will take to ensure compliance with the individualized bond hearing previously ordered by the Court.

5. If Petitioner is detained upon his return to the United States, Respondents shall provide, or take all steps necessary to ensure, an individualized bond hearing within seven days of his return. The hearing shall comply in all respects with the Court's prior order. *See* ECF No. 13.

6. If Respondents detain Petitioner outside the Western District of Pennsylvania upon his return, Respondents shall explain in their notice why detention outside this District is necessary and how they will ensure Petitioner's access to counsel, participation in the bond hearing, and compliance with this Court's prior order.

7. Petitioner and his counsel shall facilitate the implementation of this Order by all means available (*e.g.*, sharing Petitioner's location, status, and contact information with Respondents).

8. Respondents shall transmit this Order to all relevant officers, agents, and employees under their control and with responsibility in this matter.

9.  The Clerk of Court shall serve copies of this Order on all named Respondents.

_____
Stephanie L. Haines
United States District Judge